IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.A. and A.B.,<br>      Plaintiffs,<br>                    v.<br>Youth Villages, Inc.,<br>      Defendant. | Civil Action No.<br>1:19-cv-02239-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Enforce Settlement [ECF 198]; Plaintiffs' Motion to Challenge Confidentiality of Certain Materials and Re-Open the Case [ECF 202]; and motions for leave to file under seal by each side [ECF 204; ECF 206]. The motions to file under seal [ECF 204; ECF 206] are **GRANTED**. For the following reasons, Plaintiffs' Motion to Challenge Confidentiality and Reopen the Case is **DENIED**. Defendant's Motion to Enforce the Settlement is **GRANTED IN PART and DENIED IN PART**.

**I.    Background**

On May 16, 2020, this action was initiated by former Plaintiff Michelle Blevins on behalf of J.A., who was then a minor.[1] J.A. subsequently reached the

---
[1] ECF 1.

age of majority and was substituted as Plaintiff.[2] That action was consolidated for purposes of discovery and trial with another action against Defendant Youth Villages, in which A.B. was the plaintiff.

Youth Villages owns and operates the Inner Harbour campus, "one of Georgia's largest psychiatric residential treatment programs for children and youth with serious emotional disturbances."[3] While still minors, both J.A. and A.B. were patients of and resided at Inner Harbour.[4] Their pleadings alleged that they were raped, or sexually abused and assaulted by employees of Youth Villages during their Inner Harbour residencies.[5] Given the nature of the allegations in the pleadings, their status as minors at the time of the alleged harm, and the psychiatric treatment they were supposed to receive while at Inner Harbour, Plaintiffs have proceeded in this action pseudonymously, with a large amount of information being subject to the terms of a Protective Order or separately placed under seal on the docket.[6]

---

[2] ECF 128.

[3] ECF 178, ¶ 1; ECF 179, ¶ 1.

[4] ECF 178, ¶ 2; ECF 179, ¶ 2.

[5] ECF 178, ¶ 3; ECF 179, ¶ 3. *See generally* ECF 178 (J.A. Third Am. Compl.); ECF 179 (B.A. First Am. Compl.).

[6] ECF 128 (Sept. 8, 2020 Order); ECF 138 (Oct. 14, 2020 Protective Order); ECF 143 (Nov. 3, 2020 Order); June 26, 2020 D.E. (granting various motions to

The Protective Order restricts information designated as confidential to use only in this action.[7] It requires a party seeking to disclose to specifically identify the information to be disclosed, "the individual to whom disclosure is sought," and the reason for the proposed disclosure.[8] If the parties cannot agree on the disclosure, the matter is to be presented to the Court for ruling; the party asserting confidentiality has the burden to establish it.[9] All parties agreed to the terms of the Protective Order, and the Court entered it on October 14, 2020.[10] The Court retains jurisdiction to resolve any disputes arising under that Order.[11]

Each Plaintiff executed a Settlement Agreement on June 4, 2021; each agreement required each Plaintiff to dismiss her claims against Youth Villages with prejudice within ten business days after the settlement payments cleared.[12] In July, pursuant to the Court's Standing Order, the parties submitted a dispute concerning the confidential designations placed (1) by Plaintiffs on the 30(b)(6)

---

seal); Sept. 14, 2020 D.E. (same); Apr. 14, 2021 D.E. (same); Aug. 18, 2021 D.E. (same).

[7]   ECF 138, at 4–5.

[8]   *Id.* at 6.

[9]   *Id.* at 9.

[10]  *Id.* at 17.

[11]  *Id.* at 16.

[12]  ECF 207-1 (SEALED), at 2 ¶ 5; ECF 207-2 (SEALED), at 2 ¶ 5.

deposition of Youth Villages and (2) by Youth Villages on the deposition of its employee, Dr. Sherry Akers, a designation to which Plaintiffs agreed.[13] The parties agreed to extend the time for Plaintiffs to dismiss until after the Court ruled on the confidentiality dispute.[14]

The Court held a telephone conference with counsel on July 26. It denied Plaintiffs' request to remove the confidential designations from the depositions, reasoning that good cause had not been established for changing them given Plaintiffs' original agreement to the designations.[15] The Court administratively closed this action the same day based on counsels' representation that the parties had reached a settlement.[16] The parties' agreement, however, was short lived.

On July 29, 2021—having complied with its own obligations under the Settlement Agreements, including making the settlement payments—Youth Villages filed its motion to enforce the agreements against Plaintiffs.[17] Youth

---

[13] ECF 196; ECF 198, at 1–2; ECF 203 (SEALED), at 2 n.1. The parties' submissions concerning the instant dispute are attached to this Order and being filed under seal. To the extent that this Order discusses information filed under seal, the Court concludes that there is good cause for the limited disclosures herein and that such information need not be sealed in this Order.

[14] ECF 198, at 2, 10.

[15] ECF 196; ECF 199, at 17.

[16] ECF 197.

[17] ECF 198, at 6; ECF 205, at 3–4.

Villages contends that Plaintiffs refuse to file the required Rule 41 dismissal.[18] Plaintiffs oppose the motion, arguing that the confidentiality issue is still live.[19] Youth Villages replied.[20] On September 21, Plaintiffs filed their own motion challenging the denial of their request to remove the confidentiality designations, reiterating the generalized "the-public-has-a-right-to-know" arguments they had raised during the July 26 conference.[21] Youth Villages opposes.[22]

## II. Discussion

The Court addresses Plaintiffs' confidentiality motion first since it is ultimately the basis for Plaintiffs' refusal to dismiss this action with prejudice as required by the Settlement Agreements.

### A.  Plaintiffs' request to remove the confidentiality designations

To the extent Plaintiffs' motion reflects their effort to perfect the record for appeal pursuant to the Court's invitation, the Court here reduces to writing its reasons for denying Plaintiffs' request during the July 26 conference. To the extent

---

[18]  *See generally* ECF 198.
[19]  ECF 200.
[20]  ECF 201.
[21]  ECF 199; ECF 202.
[22]  ECF 205 (SEALED).

Plaintiffs seek reconsideration of that denial, their motion is substantively insufficient.

Plaintiffs' motion asserts that the transcripts should be made public in their redacted form and that some of the exhibits should be made public—while still shielding Plaintiffs' identities.[23] They make generalized arguments about the possibility of state actors or the media having an interest in (at least some parts) of the transcripts at issue.[24] These are the same basic arguments Plaintiffs made during the July 26 conference.[25] Plaintiffs attached to their motion an unauthenticated letter from a self-described investigative reporter at a local news station, requesting copies of the sealed transcripts.[26] Although the letter is addressed to the Court, it was not sent to the Court and it was only filed on the docket by Plaintiffs' counsel in connection with the instant motion. The letter is not a substitute for a proper motion from a non-party.[27]

---

[23] ECF 202, at 2–3.
[24] *Id.* at 6–7.
[25] ECF 199, at 4–8, 16.
[26] ECF 203-5.
[27] Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

Further, no specific entity, organization, or other non-party has formally sought permission to access these sealed materials or to intervene in this case.[28] Nor is it clear that Plaintiffs have standing to raise arguments based on *non*-parties' purported rights of access. *See Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 662 (M.D. Fla. 2014) (indicating that the plaintiff may not have had standing to assert that public and a non-party had rights of access to confidential discovery materials).

### 1. The July 26 Confidentiality Ruling

Plaintiffs did not challenge the deposition confidentiality designations—which they themselves requested or to which they agreed—until more than a year after the transcripts had been so designated.[29] The Protective Order provided a mechanism through which Plaintiffs could have sought removal of those designations or modification of the Order itself,[30] but they waited until after they had executed the Settlement Agreements (which themselves contain confidentiality provisions) and the settlement checks had cleared to raise this issue with the Court.[31] By then, the proper time for Plaintiffs to have raised these issues

---

[28] ECF 203-5 (SEALED).

[29] ECF 203-1 (SEALED) (May 29, 2020, 30(b)(6) dep. tr.); ECF 203-2 (SEALED) (Mar. 12, 2020 witness dep. tr.).

[30] ECF 138, at 9, 15.

[31] ECF 198, at 6; ECF 207-1 (June 4, 2021 J.A. Settlement Agreement); ECF 207-2 (June 4, 2021 A.B. Settlement Agreement). *See also* Exhibit A (Pls.' July 1, 2021

had long since passed. Moreover, there is good cause to maintain the confidentiality designations to which Plaintiffs agreed.[32]

### *i.* **The depositions are not judicial materials.**

The public's right to access judicial materials is "an essential component of our system of justice." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). And, while the presumption is that the public has access to judicial records, there is no such presumption for documents that are not. *Id.* "Materials merely gathered as a result of the civil discovery process . . . do not fall within the scope of the constitutional right of access's compelling interest standard." *Id.* at 1310 (citation omitted). Nor are discovery materials generally part of the right of access at common law. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Accordingly, "[i]t does not necessarily follow . . . that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Id.* at 31. *See also Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir. 2021) ("The right [of public access] attaches only to 'items which may properly be considered public or judicial records'—not to any

---

Discovery Dispute Submission; Def.'s July 16, 2021 Response to Pls.' Discovery Dispute Submission; Def.'s July 19, 2021 Am. Response to Pls. Discovery Dispute Submission).

[32] ECF 196; ECF 199, at 17.

and all materials produced during discovery—and it can be outweighed by competing interests.") (citing *Chi. Trib.*, 263 F.3d at 1311). *See also Seattle Times Co.*, 467 U.S. at 33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *Tillman*, 297 F.R.D. at 663 (citing *Chi. Trib.*).

The transcripts at issue here are discovery materials that are not subject to a constitutional or common-law right of access: They have only been filed on the docket in connection with the instant dispute, not in support of any substantive or dispositive motion. *Chi. Trib. Co.*, 263 F.3d at 1311. *See Seattle Times Co.*, 467 U.S. at 32 ("As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes."). The transcripts are not judicial records. Nor is there any likelihood that the depositions are likely to become so since the parties have entered into binding Settlement Agreements resolving this litigation.

> *ii.* **There is not good cause to change the confidentiality designations of the depositions.**

A party seeking to seal documents must generally first show good cause. Fed. R. Civ. P. 26(c)(1). After this initial showing, the party seeking unsealing bears the burden of showing that good cause no longer exists. *Fed. Trade Comm'n v. AbbVie Prods. LLC*, 713 F.3d 54, 66 (11th Cir. 2013). But whether the

burden is borne by Youth Villages or Plaintiffs is immaterial here because there is good cause to maintain the confidentiality of the depositions that is not outweighed by any asserted right of public access. *Callahan*, 17 F.4th at 1363.

"Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." *Chi. Trib. Co.*, 263 F.3d at 1310. The exercise of that discretion "should be informed by a sensitive appreciation of the circumstances that led to . . . the production of the particular document in question." *Chi. Trib. Co.*, 263 F.3d at 1311 (cleaned up) (citations omitted). In evaluating whether good cause exists to prevent public access, courts must balance "the asserted right of access against the other party's interest in keeping the information confidential." *Id.* (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007)). Thus, even if the transcripts *were* judicial records, the Court would not revise their confidential designation under these facts.

There is good cause to maintain the depositions under seal pursuant to the Protective Order. A court may issue such orders to protect a party from—among other things—"annoyance, embarrassment, oppression." Fed. R. Civ. P. 26(c)(1). As the Supreme Court has emphasized,

> [i]t is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters

> of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. . . . There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co.*, 467 U.S. at 34–35 (footnotes omitted) (citations omitted). Plaintiffs' suggestion that the Court's ability to protect information via a protective order is limited to trade secrets and commercial information is simply incorrect.[33] Nor is Plaintiffs' reliance on *Farnsworth v. Procter & Gamble Company*, 758 F.2d 1545 (11th Cir. 1985), particularly helpful. That case involved the efforts of non-party Centers for Disease Control to withhold information in response to a subpoena when it was of a highly personal medical and sexual nature, but P&G sought the material for trial preparation.

The bases for the parties to designate discovery materials as confidential were set forth in the Protective Order.[34] Plaintiffs themselves designated the Youth Village 30(b)(6) deposition and agreed to Youth Village's designation of

---

[33] ECF 202, at 5–7.

[34] *See generally* ECF 138.

Dr. Akers's deposition. No party challenged those designations at any point before the Settlement Agreements were executed.

"A court may restrict distribution of discovery material even if there 'certainly is a public interest in knowing more' about its contents." *Tillman*, 297 F.R.D. at 663 (quoting *Seattle Times Co.*, 467 U.S. at 31). Permitting the dissemination of information that could be "damaging to reputation and privacy"—for either side in this litigation—would be an "abuse of process" when that information was required to be produced as part of discovery. *Seattle Times Co.*, 467 U.S. at 35. The potential risks to Youth Villages' reputation and business are detailed in the affidavit of its CFO.[35] Because the parties' dispute was resolved by settlement rather than a judgment, the depositions could be used to portray Youth Villages and Dr. Akers in a negative and potentially harmful light suggesting liability when none was established.[36] Of particular concern to Youth Villages is use of the depositions by Plaintiffs' counsel for solicitation and marketing purposes.[37]

---

[35] Def.'s July 16, 2021 Discovery Dispute Submission, at 27–28 ¶¶ 15–17.
[36] ECF 205-4 (SEALED), at 6–7 ¶¶ 15–16.
[37] *Id.* at 7 ¶ 17.

The risks to Youth Villages of disclosure would further be increased because it would not fully be able to counter negative consequences and harm given that much of the information about the material allegations in this action—including the full names of Plaintiffs—remain under seal. And, although Plaintiffs contend that there are "compelling reasons" for openness here because state actors and local media *might* be interested in the protected information,[38] "there is no third party before the Court asserting 'the interest in disclosure.'" *Tillman*, 297 F.R.D. at 664. Even where a media organization was itself a *party*, the Supreme Court upheld a protective order preventing the media organization from disclosing certain discovery materials, in order to protect the other party against harassment and reprisals (which involved defamation and threats of physical harm). *Seattle Times Co.*, 467 U.S. at 26–27.

All that has been presented here is Plaintiffs strategically seeking the ability to publicly disclose information they previously agreed to maintain as confidential after they have already received the benefit of the parties' Settlement Agreements. The time for the parties to have resolved these issues or presented them to the Court was *before* they negotiated and executed Settlement Agreements that

---

[38] ECF 202, at 6–7.

"dispose of and resolve fully and completely any and all disputes, claims constituting the basis of the Action, issues, and differences between them."[39] By Plaintiffs' own admission, they did not confer with Youth Villages about the confidentiality issue until *after* the settlement was complete.[40] Having delayed raising this issue until after settlement, Plaintiffs are effectively attempting to alter the terms of the bargain they struck. This is not good cause.

For these reasons and those stated on the record during the July 26 conference, Plaintiffs' Motion to Challenge Confidentiality of Certain Materials and Reopen the Case [ECF 202] is **DENIED**.

### B. Defendants' motion to enforce the Settlement Agreements

Plaintiffs executed the Settlement Agreements on June 4, 2021.[41] The settlement payments due from Youth Villages had long since cleared Plaintiffs' counsels' account before the confidentiality dispute even arose.[42] There is no condition in the Settlement Agreements with which Youth Villages has failed to comply. Plaintiffs do not assert otherwise. Despite this, Plaintiffs have declined to

---

[39] ECF 207-1 (SEALED), at 2; ECF 207-2 (SEALED), at 2.

[40] ECF 202, at 3–4.

[41] ECF 205-3 (SEALED); ECF 207-1 (SEALED); ECF 207-2 (SEALED).

[42] ECF 205-5 (SEALED).

comply with their obligation to dismiss all claims with prejudice within ten business days after the settlement payments cleared.[43] The only relief Youth Villages wants is for the Court to direct Plaintiffs to dismiss this case with prejudice as they were required to do under the terms of the Settlement Agreement and permission to apply for an award of fees incurred while continuing to litigate this issue.[44] Youth Villages' motion [ECF 198] is **GRANTED** to the extent it seeks dismissal with prejudice. The Court **DIRECTS** the Clerk to **DISMISS** this action **WITH PREJUDICE**. Youth Villages' request for leave to seek a fee award is **DENIED**.

## III.  Conclusion

Defendant's Motion to Enforce Settlement [ECF 198] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion to Challenge Confidentiality of Certain Materials and Re-Open the Case [ECF 202] is **DENIED**. The motions for leave to file under seal [ECF 204; ECF 206] are **GRANTED**. The Clerk is **DIRECTED** to **DISMISS** this action **WITH PREJUDICE** and close the case. The parties are **DIRECTED** to comply with Paragraph 10 of the Protective Order and

---

[43]  ECF 207-1 (SEALED), at 2 ¶ 5; ECF 207-2 (SEALED), at 2 ¶ 5.

[44]  ECF 198, at 3–4; ECF 201, at 3.

return or destroy all originals and copies of materials designated as confidential thereunder.[45]

**SO ORDERED** this 28th day of March, 2022.

_____
Steven D. Grimberg
United States District Court Judge

---

[45] ECF 138, at 11.